UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM NORKUNAS,
 Plaintiff,

            CIVIL ACTION NO.
 v.           10-11949-MBB

BROSSI BROTHERS LIMITED PARTNERSHIP,
 Defendant.


MEMORANDUM AND ORDER RE:
PETITION OF THE PLAINTIFF FOR ATTORNEYS' FEES AND COSTS
(DOCKET ENTRY # 25); SUPPLEMENTAL REQUEST FOR
ATTORNEY'S FEES AND COSTS
(DOCKET ENTRY # 29)


March 7, 2012


BOWLER, U.S.M.J.

 Pending before this court is a motion for attorneys' fees and costs filed by plaintiff William Norkunas ("plaintiff"). (Docket Entry # 25).  In opposing the motion, defendant Brossi Brothers Limited Partnership ("defendant") seeks to limit the fees.  (Docket Entry # 26).  Defendant argues that the requested attorneys' fees, expert fees and litigation expenses are excessive.  (Docket Entry # 26).  After conducting a hearing on September 6, 2011, plaintiff submitted a supplemental request for fees and costs to prepare for and attend the hearing.  The total request amounts to $49,182.41.  (Docket Entry # 29).  The motion (Docket Entry # 25) and supplemental request (Docket Entry # 29) are therefore ripe for review.

PROCEDURAL BACKGROUND

The original and amended complaints (Docket Entry ## 1 & 9)[1] identify plaintiff as a disabled individual as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102. Defendant purportedly owns a shopping center located at 965 Concord Street in Framingham, Massachusetts ("Old Path Village") that plaintiff visited in the past and plans to visit in the future.[2] (Docket Entry ## 1 & 9). Defendant also leases space in Old Path Village to commercial tenants. (Docket Entry ## 1 & 9). The original and amended complaint additionally allege that defendant owns, leases or operates a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(a), and 28 C.F.R. §§ 36.104 and 36.201(a). (Docket Entry ## 1 & 9). Plaintiff therefore submits that defendant is required to comply with the ADA, 42 U.S.C. §§ 12181 to 12189. According to the amended complaint, while visiting Old Path Village in 2010, plaintiff encountered numerous "architectural barriers" in the parking lot, the restaurants, the stores and the tenant areas in

---

[1]  Defendant challenges a portion of the attorneys' fees on the basis that the work performed on the original complaint (Docket Entry # 1) and the amended complaint (Docket Entry # 9) was duplicative and unnecessary.  Thus, even though an amended complaint ordinarily supercedes an original complaint, a discussion of both complaints is therefore warranted.

[2]  The original and amended complaints identify Old Path Village's address as 965 Concord Street, Framingham, Massachusetts.  (Docket Entry ## 1 & 9).  The consent decree lists Old Path Village at 969 and 971 Concord Street, Framingham, Massachusetts.  (Docket Entry # 19).

violation of the ADA, 42 U.S.C. § 12182.  (Docket Entry # 9).

Both the original and amended complaints list various

deficiencies in the parking lot, entrances, interior spaces,

public restrooms and check out counters that violate the ADA

and/or ADA implementing regulations.  (Docket Entry ## 1 & 9).

     Plaintiff filed the original complaint in November 2010 but

did not identify defendant's tenants at Old Path Village as

causing any discrimination.  (Docket Entry # 1).  On January 11,

2011, defendant filed a motion to dismiss.  (Docket Entry # 7).

On January 17, 2011, plaintiff filed the amended complaint.

(Docket Entry # 9).  The amended complaint identifies Goody's

Pizza and J & M Diner as restaurants where plaintiff has eaten

and where he encountered problems with the parking, entrance

access and the path of travel.[3]

     In the form of relief, the amended complaint requests

attorneys' fees, litigation expenses and costs under the ADA, 42

U.S.C. § 12205.[4]  (Docket Entry # 9).  It also seeks a

declaratory judgment stating that defendant violated the ADA, 42

---

[3]  As it turns out, a consent decree executed by the parties in
June 2011 did not require modifications to the tenant spaces of
existing tenants except for requiring ADA compliant hardware to
entry doors.  It does require defendant to notify tenants of
certain requirements of the ADA.  If an existing tenant leaves
the facility, the consent decree prohibits defendant from renting
the space absent verification that the space is ADA accessible.
[4]  The relevant language states, "the court . . . in its
discretion, may allow the prevailing party . . . a reasonable
attorneys' fee, including litigation expenses, and costs."  42
U.S.C. § 12205.

U.S.C. § 12182, and injunctive relief against defendant to make facility modifications to Old Path Village in compliance with the ADA, 42 U.S.C. § 12188.[5]  The body of the amended complaint identifies ADA accessibility violations in the parking lot, the entrance access and the path of travel as well as at Goody's Pizza and the J & M Diner.  (Docket Entry # 9).

On January 31, 2011, defendant filed a motion to dismiss the amended complaint.  (Docket Entry # 11).  On July 1, 2011, plaintiff and defendant filed a joint stipulation seeking approval of the consent decree and a dismissal of the case with prejudice.  (Docket Entry # 19).  The stipulation included the executed consent decree.  (Docket Entry # 19, Ex. 1).  On July 7, 2011, this court approved, signed and entered the consent decree in an amended final order.  (Docket Entry # 22).

In consideration of resolving all disputed matters, plaintiff and defendant agreed to a number of terms delineated in the consent decree.  (Docket Entry # 19, Ex. A).  With respect to 969 Concord Street, defendant agreed to provide five accessible parking spaces and one van accessible space.[6]  Defendant further

---

[5]   The relevant language provides that, "injunctive relief shall include an order to alter facilities or make such facilities readily accessible to and useable by individuals with disabilities."  42 U.S.C. § 12188(a)(2).

[6]   The consent decree stipulates that the five accessible parking spaces must be as close as possible to the entrance to 969 Concord Street, marked with the international symbol of accessibility and have a compliant curb ramp for sidewalk access.

agreed to provide a "clear, accessible route" from parking spaces
to entrances of all tenant spaces, compliant handrails on two
stairways leading to the south end of the property and signage at
the south end of the property indicating accessible routes.
Defendant agreed to post signage with its telephone number at the
969 Concord Street entrance and provide a portable ramp for the
Christian Science Reading Room.  (Docket Entry # 19, Ex. A).  As
to the 971 Concord Street property, defendant agreed to post
signage at the entrance to the property displaying defendant's
telephone number.  (Docket Entry # 19, Ex. A).

The consent decree requires defendant to send a notice to
existing tenants that, "The ADA may require that you modify your
place of public accommodation . . . to conform with ADA
requirements" and that plaintiff has "agreed not to file any ADA
lawsuit against any tenant, . . . , as to violations . . . for
120 days to allow tenants to voluntarily comply with the ADA."
(Docket Entry # 19, Ex. A).  The consent decree does not require
defendant to make immediate changes to architectural barriers in
tenant spaces.[7]  (Docket Entry # 19, Ex. A).  The parties also
agreed that if any tenant leaves the property, defendant is not
to rent out the space to a new tenant until the space is ADA
accessible.  (Docket Entry # 19, Ex. A).

---

[7]   See footnote three.

The parties additionally agreed that defendant would install signs throughout Old Path Village advising disabled persons of the "accessible elements of the facility" including but not limited to signs for parking, signs to accessible routes and signs indicating where assistance is available upon request. (Docket Entry # 19, Ex. A).  Defendant also agreed to maintain in operating working condition "those features of the facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the [ADA]."  (Docket Entry # 19, Ex. A).

Defendant also agreed to make the modifications as stated in the consent decree but did not admit to violating the ADA. (Docket Entry # 19, Ex. A).  The parties agreed that defendant would complete all modifications delineated in the consent decree and submit to plaintiff's counsel a report summarizing the modifications by May 15, 2012.  (Docket Entry # 19, Ex. A).  The parties also agreed that architectural modifications would be complete prior to a reinspection date of May 30, 2012, unless otherwise stipulated.  In the event of defendant's failure to modify, plaintiff would be entitled to injunctive relief, according to the consent decree.  (Docket Entry # 19, Ex. A). Finally, the modifications would comply with the standards under ADA regulations, "28 CFR Chapter 1 Part 36, App. A (7-1-94 Edition)."  (Docket Entry # 19, Ex. A).

Notably for present purposes, the consent decree includes a stipulation agreement whereby defendant agreed to pay "Plaintiff's reasonable attorneys' fees, litigation expenses and reasonable expert fees and costs as agreed to in this matter." (Docket Entry # 19, Ex. A, ¶ 10).  Absent an agreement, the parties agreed to have this court determine the appropriate amount.  (Docket Entry # 19, Ex. A, ¶ 10).

On July 12, 2011, in accordance with the stipulation for approval and entry of the consent decree and dismissal filed by plaintiff and defendant, this court entered an amended final order approving and entering the consent decree.  (Docket Entry # 22).  The amended order allows this court to retain jurisdiction to enforce the decree and to determine the amount of plaintiff's attorneys' fees, costs and expert fees.  (Docket Entry # 22).

On July 22, 2011, plaintiff submitted the verified petition for attorneys' fees, costs and expert fees (Docket Entry # 25) with supporting exhibits (Docket Entry # 25, Ex. 1-7).  Including additional hours in a reply brief and the supplemental request, plaintiff seeks the aforementioned total of $49,182.41 broken down as follows:  (1) $36,232.00 of attorney's fees for Attorney Lawrence A. Fuller ("Attorney Fuller"), an amount that includes $149.50 of legal fees for "Z-Paralegal"; (2) $3,928.75 of attorney's fees for Attorney George W. Skogstrom, Jr. ("Attorney Skogstrom"); (3) $5,900.00 for expert fees for Kenneth B. Wynn

7

("Wynn"); and (4) $3,121.66 in expenses other than the expert
fees.  Defendant maintains that the requested attorneys' fees are
excessive whereas plaintiff submits that the specifics of this
case warrant the requested fees.

DISCUSSION

I.  <u>Attorneys' Fees</u>

Under the "American rule" parties are ordinarily expected to
pay their own attorneys' fees.  <u>Key Tronic Corp. v. United
States</u>, 511 U.S. 809, 809 (1994).  In cases brought under the
ADA, however, a court may allow a prevailing party reasonable
attorneys' fees, including litigation expenses and costs.  42
U.S.C § 12205.  Defendant does not dispute plaintiff's status as
a prevailing party and under the consent decree defendant agreed
to pay "Plaintiff's reasonable attorneys' fees, litigation
expenses and reasonable expert fees and costs."  (Docket Entry #
19, Ex. A).

To determine a reasonable fee award, this court "must
evaluate the data submitted by the fee-seeker, compute a
lodestar, consider the totality of the adjustment factors
approved by Congress and the Supreme Court, and make specific,
reasoned adjustments" to reduce an award when appropriate.
<u>Coutin v. Young & Rubicam P.R., Inc.</u>, 124 F.3d 331, 340 (1st Cir.
1997); <u>see</u> <u>also</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983)

8

(the "[plaintiff] bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates").  As is customary in the First Circuit, this court uses a lodestar method to determine the reasonableness of plaintiff's attorneys' fees and costs.  See Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008); accord Coutin v. Young & Rubicam P.R., Inc., 124 F.3d at 337 (lodestar method "is the strongly preferred method by which district courts should determine what fees to award prevailing parties").  The base calculation of the lodestar entails "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009); see also United States ex rel. Averback v. Pastor Medical Associates P.C., 224 F.Supp.2d 342, 348 (D.Mass. 2002).

A.  Hours Expended

    1.  Unproductive/Unnecessary

    The fact that the plaintiff is the prevailing party does not mean he can recover fees for all of the time expended during the litigation.  See Culebras Enters. Corp. v. Riviera-Rios, 846 F.2d 94, 102 (1st Cir. 1988).  Rather, the plaintiff may only recover for a reasonable number of hours spent in litigation.  Id. Calculating "the number of hours reasonably spent" initially

involves determining "the number of hours actually spent" and then subtracting hours that are "duplicative, unproductive, excessive, or otherwise unnecessary." <u>Grendel's Den Inc. v. Larkin</u>, 749 F.2d 945, 950 (1st Cir. 1984).

The court may reduce billed hours if the task is deemed non-complex. <u>See</u> <u>Foley v. City of Lowell</u>, 948 F.2d 10, 19 (1st Cir. 1991) (noting that lack of complexity constitutes an acceptable reason to reduce number of actual hours); <u>Pearson v. Fair</u>, 935 F.2d 401, 414 (1st Cir. 1991); <u>see, e.g.</u>, <u>Heath v. Silvia & Silvia Associates, Inc.</u>, 2007 WL 3259150, *3 (Mass.Super. Oct. 5, 2007) (a task's lack of complexity constitutes acceptable reason to reduce number of hours).  On the other hand, "complexity is, at best, a relative term, the parameters of which may lie to some extent in the mind of the beholder." <u>Foley v. City of Lowell</u>, 948 F.2d at 19.  The usual starting place is the contemporary billing records supplied by the plaintiff but "the court's discretion is by no means shackled by those records." <u>Gay Officers Action League v. Commonwealth of Puerto Rico</u>, 247 F.2d 288, 295-96 (1st Cir. 2001).

Turning to plaintiff's billing records, defendant argues that the 1.1 hours Attorney Fuller expended to review and perform a title search are unnecessary and not properly documented. Attorney Fuller billed 1.1 hours to conduct the record review ($467.50) and the title search. (Docket Entry # 25, Ex. 2).  The

work involved a property inquiry of a website, another inquiry to confirm ownership and a review of the record of the Secretary of Corporate Divisions of the Commonwealth.  Determining ownership of the property was necessary to file suit against the correct owner[s] of Old Path Village.  The amount of time, however, is more than necessary and therefore reduced to 0.50 hours.  See generally Pearson v. Fair, 980 F.2d at 47.

Defendant next contends that the billing records show that Attorney Skogstrom only engaged in 2.65 hours of productive work.[8]  (Docket Entry # 26).  Out of the initial 9.10 total hours Attorney Skogstrom billed (Docket Entry # 25, Ex. 2), he spent 0.20 hours reading correspondence between Attorney Fuller and Attorney John F. DelPrete, Jr. ("Attorney DelPrete"), defendant's counsel.  Attorney Skogstrom also performed unnecessary tasks of reviewing court filings which, unless he performed the electronic filing of the document, were not necessary in light of Attorney Fuller's attention and participation in the case.  See Lipsett v.

---

[8]  Defendant does not identify which of the entries for Attorney Skogstrom's time comprise the 2.65 hours of productive time.  The four monthly bills plaintiff submits for Attorney Skogstrom include one bill that totals 2.65 hours.  It contains the following entries:  November 12, 2010 (1.00 hours); November 15, 2010 (0.25 hours); November 17, 2010 (0.25 hours); November 30, 2010 (0.20 hours); December 3, 2010 (0.25 hours); December 13, 2010 (0.20 hours); December 14, 2010 (0.25 hours); and December 15, 2010 (0.25 hours).  (Docket Entry # 25, Ex. 2).  The substance of a number of entries however is strikingly similar to the substance of entries in the other monthly bills.  Accordingly, this court will not assume that the 2.65 hours refers to the entries in the November/December 2010 bill.

Blanco, 975 F.2d 934, 938 (1st Cir. 1992) (reduction of hours appropriate if hours include charges for two or more lawyers "when one would do").  Attorney Fuller took the lead role in this case (Docket Entry # 26, Ex. 2) and Attorney Skogstrom's participation was in large part not necessary and/or duplicative of the work performed by Attorney Fuller.[9]  These hours are therefore omitted from the fee award.

Reviewing the additional 3.15 hours requested for Attorney Skogstrom in the supplemental fee request, he expended 0.80 hours meeting with Attorney Fuller to prepare for the September 6, 2011 hearing on the motion for attorneys' fees and another hour attending the hearing.  (Docket Entry # 29, Ex. 8).  Attorney Skogstrom's attendance at the hearing, however, was not necessary.  The foregoing 1.80 hours of time is therefore excluded from the supplemental request.  See Lipsett v. Blanco, 975 F.2d at 938; see, e.g., Grendel's Den, Inc. v. Larkin, 749 F.2d at 953 ("no justification for the presence of two top echelon attorneys at each proceeding").  In addition, the 0.60

---

[9]   Attorney Skogstrom's entries that fall into this category are: December 13, 2010; December 14, 2010; December 15, 2010; January 11, 2011; January 17, 2011; January 19, 2011; January 31, 2011; February 1, 2011 (second entry); February 4, 2011; February 7, 2011; February 8, 2011; February 22, 2011; February 23, 2011; February 24, 2011; March 1, 2011; March 8, 2011; March 10, 2011; March 16, 2011; June 7, 2011; June 8, 2011; June 20, 2011; July 1, 2011; July 6, 2011; July 12, 2011; and July 19, 2011.

hours of work Attorney Skogstrom spent keeping himself informed[10]
is not necessary in light of Attorney Fuller's work and
duplicative of such work.  See Lipsett v. Blanco, 975 F.2d at
938; Grendel's Den, Inc. v. Larkin, 749 F.2d at 950-952.  For the
same reasons, Attorney Skogstrom's 0.50 hours of work reviewing
the opposition to the motion for attorneys' fees and the reply to
the opposition on August 26 and 30, 2011, is not necessary and
duplicative of the 3.00 hours Attorney Fuller spent reviewing the
opposition and preparing the reply brief.  The compensable hours
for Attorney Skogstrom in the supplemental request therefore
total 0.25.

Defendants next seek to eliminate duplicative time spent by
Attorney Fuller to prepare the original complaint (0.80 hours)
and the amended complaint (2.80 hours) as well as Attorney
Skogstrom's work reviewing and filing the original complaint
(1.00 hour).[11]  After plaintiff filed the original complaint,
defendant filed the motion to dismiss.  (Docket Entry # 7).
Acknowledging defects in the original complaint, plaintiff filed
the amended complaint to include additional facts in response to
the motion to dismiss.  Plaintiff submits the amended complaint
was necessary to add more facts in response to the motion to

---

[10]  These billing entries consist of "attention to" various
notices, court filings and emails.  (Docket Entry # 29, Ex. 8).
[11]  The 1.00 hour includes time for reviewing the motion for leave
to appear pro hac vice and filing the motion which this court
estimates as 0.20 hours of work.

dismiss.  (Docket Entry # 27).  In light of the duplicative nature of the work, not all of the 3.60 hours spent drafting the original and amended complaints was necessary and productive. This court therefore excludes the 0.80 hours of Attorney Fuller's time spent drafting the original complaint and the 0.80 hours of Attorney Skogstrom's time spent preparing and filing the original complaint.

Defendant additionally submits that the initial 2.70 hours Attorney Fuller expended before filing suit is not compensable because plaintiff did not issue a demand letter and otherwise failed to give defendant an opportunity to mitigate the fees. "[S]ervices performed before a lawsuit is formally commenced may be deemed to have been spent 'on the litigation' and therefore included in the calculation of a lodestar." Rolland v. Cellucci, 106 F.Supp.2d 128, 137 (D.Mass. 2000).  For example, "work associated with the development of the theory of the case" is compensable.  Webb v. Board of Education of Dyer County, Tenn., 471 U.S. 234, 243 (1985); accord Rolland v. Cellucci, 106 F.Supp.2d at 137 (quoting Webb, 471 U.S. at 243).  The billing entries consist of Attorney Fuller's telephone calls with plaintiff and Wynn as well as his review of documents to confirm the owner of the property and his review of Wynn's initial

report.  Finding the work necessary and the time expended
reasonable, it is properly included in the award.[12]

Attorney Fuller's records also contain billing entries for
non-complex tasks.  (Docket Entry # 25, Ex. 2).  Preparing the
consent decree is not a complex task.  Attorney Fuller billed
2.40 hours to prepare the consent decree on May 2, 2011.  (Docket
Entry # 25, Ex. 2).  Attorney Fuller's other consent decrees in
litigation with plaintiff (Docket Entry # 26, Ex. A-C, E & F)
(Norkunas v. DILIP Reality, Norkunas v. Peabody Center, Norkunas
v. Amisha, Norkunas v. Natick Associates and Norkunas v. Lacava
Family) use similar language.  Given the simplicity of the task
because Attorney Fuller used large portions of previously written
consent decrees, this court will reduce his hours by one half to
1.20 hours.

2.  Inadequate Billing Records

The party seeking attorneys' fees must provide the court
with adequate billing records.  See Walsh v. Boston University,
661 F.Supp.2d 91, 106 (D.Mass. 2009).  In particular, the fee
applicant must "submit 'a full and specific accounting of the
tasks performed, the dates of performance, and the number of
hours expended on each task.'"  Tennessee Gas Pipeline Co. v. 104
Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994).  Attorneys

---

[12]  As previously noted, however, the 1.10 hours of time spent to
conduct the record review and title search is more than necessary
and therefore reduced to 0.50 hours.

however are not required to record the specifics of every telephone call or email exchanged during the course of a lawsuit. See Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d at 297.  Rather, they "must keep records in sufficient detail" to permit "a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed."  Hensley v. Eckerhart, 461 U.S. at 441.  As also noted in Hensley, counsel should "at least . . . identify the general subject matter of his time expenditures."  Id. at 437 n.12.

A court may either discount or, in egregious cases, disallow hours where time records are "too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like."  Torres-Rivera v. O'Neill-Cancel, 524 F.3d at 336; accord Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d at 297; Grendel's Den, Inc. v. Larkin, 749 F.2d at 952.  As explained by the First Circuit in Grendel's Den, "the absence of detailed . . . time records, except in extraordinary circumstance, will call for a substantial reduction in any award or, in egregious cases, disallowance."  Grendel's Den, Inc. v. Larkin, 749 F.2d at 952. Accordingly, this court may eliminate billed hours that are not precise enough to assess whether the time spent was reasonable. See Alfonso v. Aufiero, 66 F.Supp.2d 183, 194 (D.Mass. 1999).  In an attempt to mitigate entries lacking sufficient detail, courts

may examine entries surrounding the task in question to determine the task's nature.  See Walsh v. Boston University, 661 F.Supp.2d at 106.

Here, a number of Attorney Fuller's and Attorney Skogstrom's billed entries simply list an email or telephone call without explaining the nature of the task.[13]  See Tennessee Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d at 634 ("failure to include some description of the subject matter of the task makes it impossible to determine if the time factor allocated was appropriate or excessive").  Entries of this nature include "Phone call," "Reviewing notes" and "Preparing letters." (Docket Entry # 25, Ex. 2).  "Such a brevis description of the task performed provides little information about the need for expenditure of time or the reasonableness of the amount of time expended."  Walsh v. Boston University, 661 F.Supp.2d at 107.

---

[13]   Attorney Fuller's entries falling into this category are: September 8, 2010; October 18, 2010; October 22, 2010; January 11, 2011 (first entry); January 12, 2011 (sixth entry); February 3, 2011; February 21, 2011 (third entry); February 22, 2011 (third and fourth entries); May 2, 2011 (first and second entries); May 24, 2011; June 6, 2011 (second, third and fourth entries); June 7, 2011 (second entry); June 9, 2011 (first and fourth entries); June 13, 2011; June 20, 2011 (first entry); June 21, 2011; June 27, 2011; and June 28, 2011 for a total of 9.00 hours.  (Docket Entry # 25, Ex. 2).  The hours in the supplemental request are adequately detailed.
   Attorney Skogstrom's entries falling into this category are: February 1, 2011 (first entry); May 2, 2011; June 21, 2011; and June 28, 2011 for a total of 0.55 hours.  (Docket Entry # 25, Ex. 2).

This court is "cognizant of the attorney-client issues inherent in describing a task such as an email or conference with a client and takes this difficulty into consideration when determining a fee award."  See id. at 107 n.22.  As explained in Walsh, the court in Tennessee Gas affirmed the lower court's "reduction given inadequate documentation for charges described" as "Confer with co-counsel;" "Confer with client," "Review materials," "Review documents" and "Legal research."  Walsh v. Boston University, 661 F.Supp.2d at 107 (internal quotations marks omitted).  Because of the inability to ascertain the subject matter of the aforementioned entries of Attorneys Fuller and Skogstrom's work, including whether the tasks were unnecessary and the time reasonably expended, the hours are reduced in half.  See Walsh v. Boston University, 661 F.Supp.2d at 107.  Specifically, the 9.00 hours of Attorney Fuller's inadequately documented hours are reduced to 4.50 hours and the 0.55 hours of Attorney Skogstrom's inadequately documented hours are reduced to 0.27.

    3.  Time Spent on Fee Application

    Plaintiff is also entitled to recover a reasonable amount for Attorney Fuller's preparation of the fee application, his review of the opposition and his preparation of the reply to

defendant's opposition and the supplemental request.[14]   See

McCafferty v. Local 254, Service Employees Intern. Union, AFL-

CIO, 186 F.3d 52, 62 (1st Cir. 1999) (noting the "well

established" principle that fee applicant is entitled to receive

"a reasonable amount . . . for time spent in applying for the

award"). Although compensable, "time reasonably expended in

connection with fee applications . . . often amounts to little

more than 'documenting what a lawyer did and why he or she did

it'" and may therefore "fairly be compensated at a reduced rate."

Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993).

Applying this principle to the case at bar, the 10.60 hours

of Attorney Fuller's time is compensable at an hourly rate

$100.00 less than his reasonable hourly rate which, for reasons

explained in the next section, is $325.00. The 0.25 and 0.50

hours respectively spent by Attorney Skogstrom updating the

billing for the supplemental application and preparing an

affidavit to support the fee request is likewise compensated at

$100.00 less that Attorney Skogstrom's reasonable hourly rate

which, for reasons explained in the next section, is $250.00.

B.  Reasonable Hourly Rates

To determine a reasonable hourly rate, the court "applies

the prevailing rates in the 'relevant community' (taking into

---

[14]  Attorney Fuller's entries that fall into this category are:
July 15, 2011; July 18, 2011; July 19, 2011; August 28, 2011; and
September 7, 2011 for a total of 10.60 hours.

account the qualifications, experience, and specialized competence of the attorneys involved)." <u>Andrade v. Jamestown Housing Authority</u>, 82 F.3d 1179, 1190 (1st Cir. 1996).  A reasonable rate therefore varies "'depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria.'"  <u>Hutchinson ex rel. Julien v. Patrick</u>, 636 F.3d 1, 16 (1st Cir. 2011).

The "relevant community" is the community where the court sits.  <u>Alfonso v. Aufiero</u>, 66 F.Supp.2d at 197; <u>accord</u> <u>Stokes v. Saga International Holidays, Ltd.</u>, 376 F.Supp.2d 86, 92 (D.Mass. 2005).  Here, the relevant community is attorneys of comparable skill, experience and reputation in the Boston area.  <u>See</u> <u>Parker v. Town of Swansea</u>, 310 F.Supp.2d 376, 388 (D.Mass. 2004).  The prevailing market rate in the community is the rate charged "'for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  <u>Andrade v. Jamestown Housing Authority</u>, 82 F.3d at 1190.

Moreover, "a district court . . . is not bound by the hourly rate requested by the victor's counsel; rather, the court may establish a rate that it considers reasonable based on counsel's skill and experience and prevailing market rates." <u>Phetosomphone v. Allison Reed Group, Inc.</u>, 984 F.2d 4, 8 (1st Cir. 1993); <u>see also</u> <u>Guckenberger v. Boston University</u>, 8 F.Supp.2d 91, 103 (D.Mass. 1998) (court "should not accept attorney submissions at

face value but rather should 'assign more realistic rates to time spent'"). The party seeking attorneys' fees must provide "'information about the experience and billing practices of the attorneys in question'" in order for this court to properly review an attorney's hourly rate. Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986); see also Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984); accord Parker v. Town of Swansea, 310 F.Supp.2d at 388.

Here, plaintiff seeks reimbursement for Attorney Fuller's work at $425.00 per hour, Attorney Skogstrom's work at $350.00 per hour and a paralegal's work at a total cost of $149.50. (Docket Entry # 25, Ex. 2). Lacking information regarding the paralegal's experience and qualifications, plaintiff fails to provide sufficient information to evaluate the hourly rate. Accordingly, the requested paralegal fee ($149.50) is not included in the fee award.

As to Attorney Fuller, he is a partner of Fuller, Fuller & Associates, P.A. in North Miami, Florida. A cum laude graduate of Boston University, he has 37 years of experience. He has 13 years of experience handling lawsuits seeking to make property owners comply with the ADA. He is also a member of the Disability Access Committee for the City of Miami Beach and a member of the board of directors of the Advocacy Center for Persons with Disabilities, an advocacy group in Florida.

21

Attorney Fuller is admitted to the bar of more than a dozen federal courts and several state courts.

Attorney Skogstrom, a member of the Massachusetts bar, practices law as a partner at Schlossberg, LLC in Braintree, Massachusetts.  He has 22 years of experience in the area of civil litigation in both state and federal courts.  Prior to this lawsuit, he served as local counsel in a number of ADA cases. (Docket Entry # 25, Ex. 1).

Appropriate fees in the Boston community for attorneys of comparable skill, experience and reputation performing similar services as Attorney Fuller range from $275.00 to $350.00.  See Norkunas v. First Shrewsbury Hotel Investments, LLC, 2011 WL 810203 *2 (D.Mass. March 9, 2011) (approving $350.00 and $275.00 respectively for Attorneys Fuller and Skogstrom for ADA case resolved by consent decree); Iverson v. Braintree Property Associates, L.P., 2008 WL 552652, *3 (D.Mass. Feb. 26, 2008) (approving $325.00 hourly rate for Attorney Fuller in ADA case that settled after more than a year); Access 4 All, Inc. v. Delancey Clinton Associates, L.P., 2007 WL 118940, *3 (D.Mass. Jan. 8, 2007) (ADA case resolved by consent decree wherein court awarded attorney with 25 years experience and attorney with 14 years experience hourly rates of $275.00 and $225.00

respectively);[15] <u>see</u> <u>also</u> <u>Tri-City Community Action Program,</u>
<u>Inc., et al. v. City of Malden, et al.</u>, 680 F.Supp.2d 306, 316
(D.Mass. 2010) (awarding $350.00 hourly rate in ADA case to
attorney who was founding partner and head of litigation at
Clark, Hunt, Ahern & Embry).

Plaintiff's reliance on <u>Hutchinson ex rel. Julien v. Deval</u>
<u>L. Patrick, et al.</u>, 683 F.Supp.2d 121, 129 (D.Mass. 2010)
(approving $425.00 hourly rate for two attorneys in ADA case),
<u>aff'd</u> 636 F.3d 1 (1st Cir. 2011), does not justify the requested
$425.00 hourly rate for Attorney Fuller.  The court in <u>Hutchinson</u>
determined that an hourly rate of $425.00 was reasonable given
the difficulty of the litigation and the importance of the relief
achieved.  See <u>Hutchinson ex rel. Julien v. Deval L. Patrick et</u>
<u>al.</u>, 683 F.Supp.2d at 128 ("[f]or a case of this importance and
difficulty, with the extremely beneficial results for this
vulnerable class of citizens, this request is eminently fair");
<u>see</u> <u>also</u> <u>Lipsett v. Blanco</u>, 975 F.2d at 939 (whether time billed
by the plaintiff's attorney is excessive or unproductive must
also be determined in light of how aggressively counsel argued
the case).  The <u>Hutchinson</u> court also awarded lower hourly rates
for the remaining five attorneys ranging from $345.00 to $212.00.

---

[15]  Both attorneys were members of the same law firm as Attorney
Fuller.

Hutchinson ex rel. Julien v. Deval L. Patrick et al., 683
F.Supp.2d at 129.

Here, the underlying facts and the litigation were
relatively straightforward.  Attorneys Fuller and Skogstrom acted
as counsel for plaintiff in similar ADA actions.  (Docket Entry #
26, Ex. B-F).  Both plaintiff and defendant agreed to a number of
plaintiff's demands as delineated in the consent decree.  (Docket
Entry # 19, Ex. A).

Considering the nature of the work, the qualifications of
Attorneys Fuller and Skogstrom and other criteria, an hourly rate
of $325.00 is reasonable for Attorney Fuller's work.  An hourly
rate of $250.00 is reasonable for Attorney Skogstrom's work as
local counsel.  Multiplying the hourly rate by the compensable
number of hours for Attorney Fuller (62.50 × $325.00) (10.60 ×
$225.00) and for Attorney Skogstrom (3.17 × $250.00) (0.75 ×
$150.00) yields a lodestar of $23,602.50 ($20,312.50 + $2,385.00
+ $792.50 + $112.50)

C.  Adjustment to Lodestar

It is within the ability and the discretion of this court to
adjust the lodestar amount up or down "but it must do so in
accordance with accepted principles."  Coutin v. Young & Rubicam
Puerto Rico, Inc., 124 F.3d at 337.  "'Once established, the
lodestar represents a presumptively reasonable fee, although it

is subject to upward or downward adjustment in certain circumstances.'" Guckenberger v. Boston University, 8 F.Supp.2d at 108.  Lodestar adjustment is based on a number of "different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter." De Jesus Nazario v. Morris Rodriquez, 554 F.3d 196, 207 (1st Cir. 2009).

The "'preeminent consideration' in the fee-adjustment process is the 'results obtained' by the plaintiffs." Guckenberger v. Boston University, 8 F.Supp.2d at 109.  After computing a lodestar, a court has the "discretion to consider an adjustment—upward or downward—based on the results obtained by taking into account [the plaintiff's] claim-by-claim success, the relief obtained, and the societal importance of the right vindicated." Burke v. McDonald, 572 F.3d 51, 65 n.11 (1st Cir. 2009); accord De Jesus Nazario v. Morris Rodriquez, 554 F.3d at 206 n.13.  Put another way, the "results obtained" ordinarily encompasses three meanings:  "'the plaintiff's success claim-by-claim, the relief actually achieved, and the societal importance of the rights vindicated.'" De Jesus Nazario v. Morris Rodriquez, 554 F.3d at 207.  It is the combination of these three elements that comprise a "results obtained" analysis. Id. ("we look to a combination of the plaintiff's claim-by-claim success, the relief achieved, and the societal importance of the rights vindicated").

1.   <u>Claim by Claim Success</u>

"If a plaintiff prevails on only some of multiple claims, then a fee reduction may be in order."   <u>See</u> <u>Coutin v. Young & Rubicam Puerto Rico, Inc.</u>, 124 F.3d at 339; <u>Grendel's Den, Inc. v. Larkin</u>, 749 F.2d at 952-54; <u>see</u> <u>also</u> <u>Hensley v. Eckerhart</u>, 461 U.S. at 436 (explaining that if a plaintiff "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount").   A reduction on a claim by claim basis is inappropriate however where "unsuccessful claims were based on a common core of facts and related legal theories." <u>Guckenberger v. Boston University</u>, 8 F.Supp.2d at 109; <u>Bogan v. City of Boston</u>, 489 F.3d 417, 428 (1st Cir. 2007) ("discounting hours spent on unsuccessful claims does not apply, however, where both the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories"). Conversely stated, when "a fee adjustment is intended to reflect the success or failure of claims that are themselves separate and distinct, an inquiring court may simply exclude time spent in litigating the unsuccessful claims." <u>U.S. v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named Flash II</u>, 546 F.3d 26, 39 (1st Cir. 2008) (citing <u>Coutin</u>, 124 F.3d at 338).

Here, the amended complaint consisted of an ADA claim which comprised multiple and specific remedies listed in paragraph ten.

Even if it included more than one claim, the facts arose from a
single and unified set of facts of the non-compliant
architectural barriers present at Old Path Village.  See
Guckenberger v. Boston University, 8 F.Supp.2d at 109.  An
adjustment on a claim by claim basis is therefore not
appropriate.


2.  Relief Actually Achieved

    Recognizing that the results obtained presents a
constellation of factors, this court turns to the relief actually
achieved.  See Coutin Young & Rubicam Puerto Rico, Inc., 124 F.3d
at 338.  The relief plaintiff actually achieved included five
accessible parking spaces, signage and notices regarding
accessible routes within the premises along with the installation
of compliant doorknobs, ramps and handrails.  (Docket Entry # 19,
Ex. A).  Defendant correctly points out that plaintiff's relief,
while favorable, did not extend to modifying tenant controlled
spaces.

    It is true that the only relief regarding tenant spaces is
the requirement of a notice to the existing tenants that they may
have to make their spaces ADA compliant to avoid future lawsuits
from plaintiff and a requirement that defendant not rent space to
a new tenant without a verification that the space is ADA

accessible.  The consent decree did not require the tenants identified in the amended complaint, Goody's Pizza and J & M Diner, to make immediate modifications to their tenant controlled spaces.  Plaintiff also sought a declaratory judgment that defendant is in violation of the ADA, 42 U.S.C. §§ 12181 to 12189.  (Docket Entry ## 1 & 9).  The terms of the consent decree do not declare that defendant violated the ADA.  (Docket Entry # 19, Ex. A).

On the other hand, plaintiff sought significant and explicit architectural changes to Old Path Village (Docket Entry # 9, ¶ 10) and the consent decree provides more than limited relief in such modifications.  (Docket Entry # 19, Ex. 1).  In particular, the amended complaint specifies 27 modifications or changes to the property categorized into parking (ten modifications), entrance access and path of travel (ten modifications), access to goods and services (six modifications), public restrooms (two modifications) and business and mercantile establishments (one modification).  The consent decree includes modifications to parking spaces (providing six accessible parking spaces at the 182 parking space facility), signage, ramps, handrails and accessible routes from accessible parking spaces to entrances to tenant spaces.  The consent decree also provides relief in the form of compliant curb ramps with an access aisle allowing access to the sidewalk.

In short, although plaintiff did not receive all of the relief he requested, including in tenant controlled spaces, he did achieve more than limited relief.  Where, as here, plaintiff prevailed on the ADA claim and obtained relatively significant relief in relation to the modifications requested, a downward adjustment is not appropriate.  Cf. Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d at 339 (if the plaintiff "prevail[s] on all her claims, but will receive limited (though not insubstantial) redress[,] . . . it is appropriate . . . to consider the skimpiness of the relief when adjusting the lodestar figure").

3.  Societal Importance of Rights Vindicated

Plaintiff contends that this case vindicated important rights for society as a whole and especially for disabled persons.  (Docket Entry # 25).  Public facilities such as Old Path Village are required to be ADA compliant.  Enforcing ADA compliance with respect to accessibility involves public significance for all handicapped individuals, not just plaintiff.  See, e.g., Parker v. Town of Swansea, 310 F.Supp.2d at 399.  Thus, although defendant accurately points out that plaintiff's remedies per the consent decree did not achieve as much as plaintiff originally sought, an adjustment based on the societal importance of the right is not appropriate.

29

In sum, considering the results obtained, the difficulty of the litigation and the societal importance of the rights vindicated, a downward adjustment to the lodestar is not appropriate.

II. <u>Expenses and Expert Fees</u>

In the initial fee application, plaintiff seeks expenses in the amount of $8,286.04, an amount that includes a $5,900.00 expert fee for Wynn.[16]  The supplemental request adds $568.59 in airfare for Attorney Fuller to attend the September 6, 2011 hearing on fees.

It is well settled that "reasonable expenses, necessary for the prosecution of a case, are ancillary to and may be incorporated as part of a fee award under a prototypical federal fee-shifting statute."  <u>Hutchinson ex rel. Julien v. Patrick</u>, 636 F.3d at 17.  Components of an award of expenses include the "reasonable costs and expenses for travel, printing, and photocopying."  <u>Id.</u>; <u>Quint v. A.E. Staley Manufacturing Co.</u>, 245 F.Supp.2d 162, 179 (D.Me. 2003) ("[c]osts incurred for transportation, lodging, parking, food and telephone are both

---

[16]  The $8,286.04 figure is for costs plaintiff incurred to Attorney Fuller's law firm.  The figure includes court costs and filing fees which are reasonable, necessary and properly included in the award.  Plaintiff does not request costs advanced by Attorney Skogstrom which include filing fees and a process server fee.  The issue is therefore waived.  <u>See</u> <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 260 (1st Cir. 1999) ("district court is free to disregard arguments that are not adequately developed").

reasonable and necessary"). An award of reasonable expert fees may also be appropriate. See, e.g., Norkunas v. First Shrewsbury Hotel Investments, LLC, 2011 WL 810203, at *2 (certain "requested expenses, including expert fees, is reasonably well documented and will be allowed"). In order to recover such costs, they must be adequately documented. See Norkunas v. First Shrewsbury Hotel Investments, LLC, 2011 WL 810203, at *2 (because "expense request is completely undocumented (there are no supporting receipts), the request for $1,000.00 in generic travel expenses is disallowed"); Iverson v. Sports Depot, Inc., 2002 WL 745824, *3 (D.Mass. Feb. 2, 2002) (denying costs "for 'litigation expenses and miscellaneous'" because they were "wholly unexplained"); Guckenberger v. Boston University, 8 F.Supp.2d at 112 (denying expert fees given failure to document "expert's rate, hours spent, nature of work, tasks performed [and] dates").

Attorney Fuller and Wynn incurred necessary travel expenses to attend an inspection of the property in March 2011. Plaintiff documents the expenses with a credit card statement listing airfare charges for Attorney Fuller and Wynn. (Docket Entry # 25, Ex. 3). The total charge for the properly documented airfare for Wynn is $616.80 and Attorney Fuller is $198.40.[17] The total

---

[17] Wynn's departure and return flights on March 22 and 23, 2011, cost $616.80 ($188.40 departure flight; $388.40 return flight; $10.00 prepaid ticket authorization fee; and $30.00 in taxes). Attorney Fuller's flight on March 22, 2011, cost $188.40 along with a $10.00 prepaid ticket authorization fee. (Docket Entry #

charge for the properly documented hotel accommodations is $359.90.[18]  Properly documented parking fees, meals and rental car transportation charges total $203.88.  Because Attorney Fuller and Wynn also attended an inspection in an unrelated ADA case on the same day, they seek reimbursement at 50% of the charges.  Finding the reduction appropriate as resulting in a reasonable expense, the foregoing charges ($1,378.98) result in reasonable expenses totaling $689.49.

Turning to the request for $568.59 in airfare for Attorney Fuller to attend the September 6, 2011 hearing, the billing statement lists airfare in the amounts of $197.69 and $370.70. The airline receipt attached to the billing statement however only documents airfare in the amount of $370.70 and $164.00. Finding the $33.69 difference between $197.69 and $164.00 not adequately documented, plaintiff is entitled only to the $534.90 documented charge.

The $200.00 charge for a title search is properly documented partly because the date of the search corresponds with the date of Attorney Fuller's work to determine ownership of Old Path Village.  It is therefore compensable.  The charge for the reinspection fee ($750.00) however is premature because the final

_____

25, Ex. 3).  Lacking a credit card statement or other sufficient documentation for Attorney Fuller's return flight, it is not compensable.

[18]  Attorney Fuller bills for two hotel rooms on March 24, 2011, at $179.95 each.  (Docket Entry # 25, Ex. 3).

property reinspection "will take place on or after May 30, 2012." (Docket Entry # 20). Plaintiff may resubmit the request with an invoice once the inspection takes place. As stated in the verified application, the expenses for photocopying arose largely due to court filings including responses to motions. The telephone charges are also adequately documented, necessary and reasonable. (Docket Entry # 25, p. 11). Both categories of expenses are therefore included in the award as are the necessary and reasonable court costs ($50.00) and filing fee ($350.00). Defendant however correctly points to a lack of documentation for the Federal Express shipments. The verified application only attaches the billing invoices. The invoices do not include the subject matter or otherwise identify the necessity for the shipments. Moreover, the dates of the shipments do not adequately elucidate the necessity for the shipments. Accordingly, the award does not include the charges for the Federal Express shipments. Reasonable and adequately documented expenses therefore total $1,893.90.

Turning to Wynn's fee, defendant challenges the reasonableness of the $5,900.00 fee and seeks a reduction "to no more than $2,000.00." (Docket Entry # 26). Wynn's invoice shows an excessive or unreasonable amount of time to draft the

report.[19]  (Docket Entry # 25, Ex. 6).   The $5,900.00 expert fee
is therefore reduced to $3,000.00.

In sum, plaintiff is entitled to an award of reasonable
expenses in the amount of $4,893.90.   Added to the lodestar
($23,602.50), the award totals $28,496.40.

CONCLUSION

In accordance with the foregoing discussion, the petition
(Docket Entry # 25) and the supplemental request (Docket Entry #
29) are **ALLOWED** in part and **DENIED** in part.   Plaintiff is
entitled to an award of $28,496.40.


   /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

_____

[19] Wynn's invoice entries state:

(1) Travel to inspection site (2.00 hours), (2) Inspection
of property (2.50 hours), (3) Phone conversations &
conferences with client re:  property (2.80 hours), (4)
Analyze photographs depicting violations (2.50 hours), (5)
Collaboration and verification of ADA violations, reviewed
photographs, preliminary online research concerning property
(3.40 hours) (6) Draft this report (16.30 hours).

Docket Entry # 25, Ex. 6).   The total number of hours is 29.50 at
a rate of $200.00 an hour.